Good morning. May it please the court. My name is Amy Gilbrow. I represent Tina Van Sickle in the Social Security Disability Proceeding. I understand that I need to watch my time. I would like to reserve two minutes for rebuttal if I could. There are three legal errors that the plaintiff has raised in this case. Essentially each one of them deal with failure of the ALJ to make findings required under the regulations, rulings, and case law in his discussion of the evidence in his decision. To orient the court to the ALJ's decision, the discussion of the residual functional capacity assessment, which is the area of the ALJ's decision where we assign error, is located at page 30 of the excerpts of record. It is our position as a whole that that residual functional capacity discussion was insufficient. In particular, we raised three specific problems with it. First, as part of her application, Ms. Van Sickle was sent to a consultative examiner, Dr. Geary. Dr. Geary opined that Ms. Van Sickle would have moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. We called this moderate limitations in attending work. He also found that she'd have moderate limitations in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, and I'll briefly shorten that to her ability to persist at work or to sustain work activity. So he found she had moderate limitations in her ability to attend and persist work. When these limitations were presented to a vocational expert at the hearing, at page 55 of the excerpts of record, the vocational expert testified that Ms. Van Sickle would be unable to perform any of the jobs that the ALJ subsequently relied upon in his decision. What page is that? Page 55. Now getting back to this other limitation, you say the... That's what I'm still discussing. That was not part of the, I guess, hypothetical for the vocational expert, right? Right. Are you referring there to like the mental limitations? Yes. Go ahead. So the ALJ discussed Dr. Geary's factual findings briefly at step two at page 27 of his decision, but at page 29 of his decision and elsewhere in his decision, it contains no indication what he made of these limitations that Dr. Geary assessed. The commissioner has argued that the ALJ's residual functional capacity assessment is consistent with Dr. Geary's opinions of limitations, those two limitations I mentioned at the beginning of my argument, because the ALJ limited Ms. Van Sickle to unskilled work. It's our position that the limitations I mentioned before in attending and persisting work are not accommodated by a limitation to unskilled work for three reasons. First, Dr. Geary, in offering opinions regarding limitations, didn't find Ms. Van Sickle had any limitations in the type of skilled work she could perform. He found she could perform detailed work. He found she wouldn't have any problem with simple work. He found she wouldn't have any problems with judgment. The ALJ in his residual functional capacity assessment didn't find that Ms. Van Sickle would have any limitations in attending and sustaining work. And in particular, this is clear because when the vocational expert was offered a hypothetical for unskilled work, he was able to identify three jobs Ms. Van Sickle could perform. But when the ALJ was offered the two limitations in attending and sustaining work, the vocational expert testified Ms. Van Sickle couldn't work. So what we're arguing is that the ALJ should have at least addressed Dr. Geary's opinion of limitation in his decision. He didn't do that. That's legal error. And we are requesting, because the vocational expert testimony establishes that those limitations are disabling, that the court remand this case for payment of benefits under Lester based on Dr. Geary's opinion and her evidence as a whole. Well, you say the ALJ did not address them or consider them? He did not. Dr. Geary's opinion. Isn't that basically the same as Dr. Fuller's? Yes. Dr. Fuller is the state agency medical consultant, and Dr. Fuller also found that Ms. Van Sickle would have these moderate limitations. In addition, Dr. Fuller found that she was limited to low stress work, and the ALJ didn't address that. You're not suggesting that they require to consider every limitation found by Dr. Geary or Dr. Fuller, are you? Well, the ALJ is required to consider medical experts' opinion. Yes. And I'm not contending that the ALJ did not do that. Yes, I am. In other words, you're contending that the so-called moderate mental limitation that was testified to, and one, the ALJ didn't give any reason for disregarding it. Right. On the other hand, you're saying, but did he consider it? Right. Construction is hypothetical for the VE. That's right. And, you know, the commissioner will argue that this limitation to unskilled work encompasses the opinions that Dr. Geary gave, but there's nothing in the ALJ's decision which will allow the court to jump from Dr. Geary's conclusions to a limitation to unskilled work encompassing that. You don't think that's just a matter of common sense? No, I don't think it is. Unskilled work is work that requires the ability to perform simple work that can be learned in a short period of time. Unskilled work requires individuals to attend and persist. The vocational expert testified that she couldn't do the unskilled work identified by the ALJ with these specific moderate limitations. Maybe I'm reading at step five what the ALJ found, that it has a residual functional capacity to perform at least the exertional requirements of light, unskilled work with the following restrictions. Right. So the ALJ limited misspecifical to light, unskilled work. How does that address Dr. Geary's opinion? Our argument is that doesn't address Dr. Geary's opinion that she's going to have difficulty sustaining work activity and attending work. Dr. Fuller says, I think this is a quote, that can work in a simple, unskilled, competitive job in a low-stress setting that is away from the general public. That's correct, she did. She also found that Ms. Vensicle would have moderate limitations in her ability, in the same limitations that Dr. Geary addressed. That's her. Limited but not precluded as to her ability to perform activities within the schedule and maintain regular attendance. That's correct. Okay. And when that opinion was offered to the vocational expert at page 55, he testified Ms. Vensicle could not perform the work identified by the administrative law judge. So are you saying that the ALJ's hypothetical didn't account fully for Dr. Fuller's limitations? Yes. The second issue in the case is the headaches, that the ALJ found Ms. Vensicle had severe headaches at step two of the sequential evaluation process, which means he found she had headaches. Those headaches caused limitations in basic work activities. The rulings, again, require the ALJ to explain in his decision what he made of the medical evidence, the testimony under SSR 96-8P regarding the headaches. Was this challenged in the district court? Yes, it was. I see we only have a little bit of time left. I'd like to retain some time for rebuttal. All right. Thank you. Go ahead, please. Good morning, Your Honors. Brenda Pullen, appearing on behalf of the commissioner. This is actually a simple case. The claimant disputes that the ALJ's assessment of her limitations due to depression was incorrect, but the claimant had no treatment for depression, and the claimant was taking no medications for depression. There is medical opinion. Yes. Only two physicians actually considered her mental limitations, and both at the request of the Social Security. There's nothing in the ALJ's opinion that addresses those. Nor does he have any reason for discussing them, does he? Right. The ALJ discussed Dr. Geary's opinion. That's the consultative examiner. And then, in fact, both of the physicians said that claimant could do some kind of work. The simple kind of work. What about this, you know, that page that Ms. Gilbert referred to, the examination, the VE who said, well, if you had those limitations, then no, she can't do the work? Moderate limitations. The ones that were posed to the VE is not an RFC finding. That is not a residual functional capacity. Those are considerations at steps two and three of the sequential evaluation, and the ALJ considered them appropriately at that point. This is at ER 28, where the ALJ found that the claimant had mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. So what are you saying? Those don't have to be incorporated into the hypothetical for the VE? That's correct. That is not an RFC finding. That is the VE criteria under 20 CFR 404-1520A, the evaluation of mental impairments. But that is prior to the RFC, and it's separate from the RFC. The ALJ also pointed out that plaintiff had no psychotropic medications and did not receive any mental health counseling, and he found that claimant's mental limitations are, at worst, mild to moderate in severity. And two cases that this court has previously decided mandate affirmance in this case, and that's Hupai and Stubbs-Danielson. Are those the cases decided in your brief? They are. In Hupai, the court found that mild and moderate limitations due to depression, the claimant with mild and moderate limitations due to depression, could perform light work. And in Stubbs-Danielson, the court found that the ALJ properly translated mild and moderate mental limitations into an RFC of simple routine work with no interactions with the public. That is strikingly similar to the RFC that the ALJ found here. And the court held that this properly captured the mental limitations. With respect to the headaches, there were no functional limitations due to headaches demonstrated by the evidence. No doctor opined that she had certain limitations due to headaches. Her headaches were extensively worked up, and no objective rationale for them was found. And in light of that, the evidence of headaches is entirely claimant's own testimony, which the ALJ found not credible. And the claimant here did not contest that at the district court level. Yes, the district court found, this is at ER 14 through 15, the ALJ is only required to take into account those limitations for which there was record support that did not depend on plaintiff's subjective complaints. And so it's to Bayless. While plaintiff reported that her headaches were debilitating at times, the ALJ found plaintiff's subjective complaints less than credible, a finding that plaintiff does not challenge here. And then the court goes on to describe the medical evidence regarding the headaches and concludes, in short, there is no evidence that plaintiff had any specific limitations flowing from her headaches. That is at ER 15. Well, wait a minute. That's not the same as not raising it. You said she didn't raise it. Yes. The district court ruled that the credibility finding was a finding that plaintiff does not challenge in the district court. And if that was incorrect, then the plaintiff at that point should have sought reconsideration from the district court. All right. Anything else? No. All right. Thank you very much. Thank you. I have four points to make based on the government's argument. First, Judge Tsutsuma, as you pointed out, the ALJ didn't talk about Ms. Van Sickle's mental health treatment and therefore the court can't rely on that reason to affirm the ALJ's decision. The commissioner is essentially inviting the court to violate the Chenery Doctrine. Also, the government's argument that moderate can never be included in a residual functional capacity assessment is misleading. We addressed this issue at length in our reply brief starting at page 11. The commissioner uses the word moderate in residual functional capacities assessments in administrative law judges' decisions on a regular basis. And finally, as we pointed out in our reply brief, the issue of credibility was raised in the district court in plaintiff's reply at page 8. Those issues have been further fleshed out in the opening and reply briefs here, and we'd ask the court to look at those before affirming the commissioner's decision on that basis. Thank you very much. In the district court, it was raised in the reply brief at page 8, of course, in our briefs here in court. The district court raised the issue of credibility. I don't see why a plaintiff can't have an opportunity to respond to that argument, which she did in her reply brief. Judge Stafford, am I not making sense? Run it by me one more time. In her brief, in her opening brief, Ms. Vensickel raised an issue about headaches. Are we talking about the district court? Well, let's say the district court raised an issue about headaches. Well, that's what I want to talk about. Right. What was raised in the district court, did you raise it, did the plaintiff raise it there, or did I think there's some suggestion here that it was waived because it was not raised in the district court. I don't believe it was waived. Number one, Ms. Vensickel raised the issue of the headaches in the decision. The commissioner responded with a credibility argument, and plaintiff responded to that credibility argument in her reply brief and has raised it in her opening brief in this court. So I do not believe that the credibility assessment, as it relates to headaches, has been waived in this case. Okay. Thank you. Thank you. Thank you very much. All right. Then Vensickel v. Aschew is submitted for decision. We thank both counsel for their argument.
judges: Stafford, Tashima, Thomas